IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ADRIAN LOPEZ,                          )
                                       )
                    Plaintiff,         )     **CIVIL ACTION**
                                       )
v.                                     )     No.  07-03326-MLB
                                       )
DAVID MCKUNE, et al.,                  )
                                       )
                    Defendant.         )
_____)


## MEMORANDUM AND ORDER

**I.  INTRODUCTION**

     This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent answered, but petitioner has failed to file a traverse. (Docs. 9, 14).  Because the time-frame allowed for petitioner to file his traverse has passed, the matter is ripe for decision.[1]   The court has reviewed those portions of the state court record which are pertinent to the issues raised in the application and finds that an evidentiary hearing is not warranted.  The application is DENIED for reasons set forth herein.

     Petitioner was convicted of first-degree felony murder following a jury trial in state court and sentenced to life, hard 40, in prison. In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Petitioner does not challenge the state court's findings.

_____

     [1] Petitioner's traverse was due on August 11, 2008.  He is represented by counsel.

Accordingly, the court incorporates the Kansas Supreme Court's version of the facts:

> Carlos Martinez died on June 21, 1998, from injuries resulting from three gunshots to his head. The shots were fired from behind Martinez and to his right. One shot was fired within inches of Martinez' head, another within a foot, and the third from beyond a foot. The pattern of the shots being fired at varying distances is consistent with the gun staying in one place while the victim moved away from it.[2] The coroner testified that Martinez, in all likelihood, lost consciousness instantly.

> For approximately 3 years, Martinez had been the boyfriend of Kimberly Simon. Simon's 16-year-old daughter, Rachel Anguiano, had been dating Lopez, the defendant, for approximately two years. Martinez knew Lopez.

> Anguiano and Lopez spent the night of June 20, 1998, together at the Super 8 Motel. They quarreled. It was a very serious quarrel, which was not resolved to Lopez' satisfaction while they were at the motel. Their clothes were in one bag, and there was a handgun in the bag. Anguiano testified that she had not seen the gun before and she did not put it in the bag.

> Late Sunday morning, June 21, Anguiano telephoned her mother to get a ride home for her and Lopez. Simon telephoned Martinez, who lived with his brother in North Topeka. Martinez went to the motel by himself to pick up Anguiano and Lopez.

> Martinez was driving a 2-door car. The driver's door did not close properly, and Martinez used a bungee cord on the inside to hold it closed. Lopez got into the back behind Anguiano, who was in the front passenger seat, and Martinez drove. The bag was in the back with Lopez. Anguiano testified that Lopez wanted her to go home with him and continue their discussion, but she wanted Martinez to take Lopez home and then take her to where she lived with her mother.

> As they were driving, Anguiano heard gunshots in rapid

---

[2]In his motion, petitioner claims that he "lost control of the gun and it accidentally discharged." (Doc. 8 at 3). Accidently discharged three times?

succession and out of the corner of her eye saw Martinez
fall out of the car. She did not know how the car door got
opened. The car continued moving after Martinez fell out.
Anguiano did not have time to think because it all happened
so fast. She made no effort to steer or brake. After
traveling quite a distance, the car ran into a building.
Anguiano was not hurt, and she got out of the car.

Anguiano testified that Lopez had their bag with him
when he got out of the car. He threw it in a nearby
Dumpster. Lopez asked her if she was going to tell the
police. She did not remember answering him. They ran
approximately 5 blocks to where Lopez lived. Before going
into his residence, Lopez told Anguiano to wait for him by
the bridge. She did not. Instead, she waited outside for a
few minutes and then ran to the Ramada Inn.

From the Ramada Inn, Anguiano telephoned Simon and
asked to be picked up there. Approximately 10 minutes
later, her mother arrived with Anguiano's aunt. Anguiano
told them Lopez had shot Martinez, and they drove to the
hospital.

A family of four was driving in their car when the
older brother heard gunshots and saw Martinez fall from his
car. The car left the road, went through a wall bordering
a parking lot, crossed the parking lot, and "slam[med] into
the building." The witness estimated the speed of the
driverless car at 30 to 35 m.p.h. After they turned around,
the witness saw two people go to the car that had collided
with the building, one of them reached in and grabbed
something, then the two ran between some buildings away
from the car.

Another witness was located by police from the license
number supplied by the family of four. He saw Martinez fall
from the car, and he saw the car strike the building. He
reported that he saw a man and a woman in the back seat of
the car and that the male was holding a gun and pointing it
up.

Lopez did not testify at trial. The prosecutor played
for the jury a videotaped statement given by the defendant
to police. It is not a part of the record on appeal.

A young man named Darrik Forsythe, an admitted gang
member with a criminal history, met Lopez in the Shawnee

County Jail after Lopez had been taken into custody with regard to Martinez' death. Lopez talked to Forsythe through the vent. Forsythe testified: "He just told me that him and Carlos [Martinez] and his girlfriend was driving down the road and he was in the back, his girlfriend was in the front, they had broke up and he asked her to come back to the house and to smoke a joint with him and then she wouldn't answer him and he said that if she don't answer him before he gets to the end of the block, he's going to shoot Carlos in the head." Forsythe also testified that Lopez told him Anguiano "was going to die for snitching."

State v. Lopez, 271 Kan. 119, 119-21, 22 P.3d 1040, 1043-44 (2001) (Lopez I).

The Kansas Supreme Court affirmed petitioner's conviction on direct appeal.[3] Id. Petitioner then sought post-conviction relief under K.S.A. 60-1507. The state district court denied relief after an evidentiary hearing and the Kansas Court of Appeals affirmed.[4] Lopez v. State, No. 90,736, 156 P.3d 690, 2007 WL 1239249 (Kan. Ct. App. Apr. 27, 2007)(Lopez II). The Kansas Supreme Court denied review on October 1, 2007.

## II. ANALYSIS

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[3]Petition for re-hearing was denied on June 12, 2001.

[4]Petitioner's first 1507 hearing was conducted without an evidentiary hearing. The Court of Appeals remanded the case for an evidentiary hearing. (R. XXIII, 45).

determined by the Supreme Court of the United States," 28 U.S.C. §
2254(d)(1); or 2) if the state court decision "resulted in a decision
that was based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding." Id. §
2254(d)(2).

> A state court decision is "contrary to"
> Supreme Court precedent in two circumstances: (1)
> when "the state court applies a rule that
> contradicts the governing law set forth in [the
> Court's] cases"; or (2) when "the state court
> confronts a set of facts that are materially
> indistinguishable from a decision of [the] Court
> and nevertheless arrives at a result different
> from" that reached by the Court. Williams v.
> Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 146
> L. Ed. 2d 389 (2000). A state court decision
> constitutes an "unreasonable application" of
> Supreme Court precedent if "the state court
> identifies the correct governing legal principle
> from [the] Court's decisions but unreasonably
> applies that principle to the facts of the
> prisoner's case." Id. at 413, 120 S. Ct. 1495.
> Thus, "[u]nder § 2254(d)(1)'s 'unreasonable
> application' clause, . . . a federal habeas court
> may not issue the writ simply because that court
> concludes in its independent judgment that the
> relevant state-court decision applied clearly
> established federal law erroneously or
> incorrectly. Rather, that application must also
> be unreasonable." Id. at 411, 120 S. Ct. 1495;
> see also Thomas v. Gibson, 218 F.3d 1213, 1219-20
> (10th Cir. 2000) (discussing Williams).
> Finally, a state prisoner seeking habeas
> relief based on alleged erroneous factual
> determinations must overcome by clear and
> convincing evidence the presumption of
> correctness afforded state court factual
> findings. See 28 U.S.C. § 2254(e)(1); Smith v.
> Mullin, 379 F.3d 919, 924-25 (10th Cir. 2004).

Hamilton v. Mullin, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent
limitation to review under § 2254 is that a habeas court will only
consider alleged violations of federal law. Estelle v. McGuire, 502
U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court

will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

On direct appeal of his conviction and sentence, petitioner asserted the following ten errors: (1) the trial court erred by denying Mr. Lopez' request for substitute counsel; (2) the trial court erred by failing to appoint two licensed professionals to screen Mr. Lopez' competency to stand trial; (3) the trial court erred by finding that Mr. Lopez was competent to stand trial; (4) the trial court erred by conducting critical trial proceedings outside of Mr. Lopez' presence in violation of his statutory and constitutional right to be present; (5) the trial court erred by admitting a letter purportedly from Mr. Lopez that was not sufficiently identified; (6) the trial court erred by failing to give lesser offense instructions for involuntary manslaughter and voluntary manslaughter based on an honest but unreasonable belief in self-defense; (7) the trial court erred by giving an instruction regarding burden of proof that effectively misled the jury regarding the state's burden; (8) the trial court erred by instructing the jury that in order to find Mr. Lopez guilty of voluntary manslaughter, it must find the mitigating circumstance of heat of passion beyond a reasonable doubt; (9) the trial court erred by imposing hard-forty sentence; and (10) imposition of a hard-forty sentence without a jury finding, beyond a reasonable doubt, of the required aggravating factor, violates the Sixth Amendment right to a jury trial and the Kansas Constitution. Br. of Appellant in

Lopez I. In his K.S.A. 60-1507 appeal, petitioner wisely limited his claim to alleged ineffective assistance of counsel for failing to adequately investigate the issue of his competency to stand trial. Br. Of Appellant in Lopez II.

Petitioner's application for federal habeas relief states six grounds for relief. (Doc. 1). Petitioner has raised the following issues: (1) Mr. Lopez' Sixth Amendment right to counsel was violated when the trial court failed to grant a request for substitute counsel; (2) the trial court denied Mr. Lopez his right to psychiatric screening in violation of the United States Constitution; (3) the trial court violated Mr. Lopez' Constitutional rights by finding him competent to stand trial; (4) Mr. Lopez was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to raise Mr. Lopez' competence to stand trial; (5) Mr. Lopez' was denied his Constitutional right to be present when critical stages of the prosecution took place in his absence; and (6) Mr. Lopez' Constitutional rights were violated when the jury instruction regarding burden of proof misled the jury.

In his order of January 9, 2008 (Doc. 4), Judge Crow noted that there was a question whether grounds (2) and (3) had been exhausted and advised petitioner to "clarify how each claim was exhausted in his supporting memorandum." Petitioner has not done so and instead has briefed only issue (4); a wise decision by competent counsel. Nevertheless, to foreclose any possible claims of error and hopefully bring this matter to a close in the federal courts, the court will discuss each ground.

**A. Substitute Counsel**

Petitioner's first claim is that the state court erred in denying his request for appointment of substitute counsel.  On the eve of trial, petitioner made a request for substitute counsel.  Petitioner stated that his defense counsel, Mr. Bandy, only discussed sentencing and a plea agreement with him and further claimed he was not ready for trial.  These statements, however, subsequently turned out to be inaccurate.  Mr. Bandy told the court that in addition to a plea agreement, he had discussed possible defenses and the potential maximum penalties.  Petitioner did not dispute Mr. Bandy's statements and the district court found that petitioner had plenty of time to prepare for trial.

Mr. Bandy further stated that his relationship with petitioner had deteriorated.  Petitioner was angry with Mr. Bandy because he discussed a new plea agreement with petitioner.  According to petitioner, Mr. Bandy was a bad spirit because his advice was contrary to what God was telling petitioner.[5]  Petitioner refused to listen to Mr. Bandy's advice.

Substitute counsel is warranted when there is a complete breakdown of communication between a petitioner and his or her trial counsel.  <u>Romero v. Furlong</u>,215 F.3d 1107, 1113 (10th Cir. 2000).  The district court should make four inquiries: (1) whether [petitioner] made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; (3) 'whether the conflict between the defendant and his attorney was so great that it resulted

---

[5]Mr. Bandy explained that petitioner believed God would perform a miracle.

in a total lack of communication preventing an adequate defense[]'; [and] ... (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication.  Id.

The district court determined, and the Kansas Supreme Court agreed, that petitioner's relationship with Mr. Bandy was not so conflicted or strained to require substitute counsel.  Petitioner was not entitled to appointed counsel of his choice.[6]  Mr. Bandy told the court that Wendell Betts, petitioner's first attorney, had discussed the entire case with petitioner.[7]  Mr. Bandy stated he discussed plea agreements and the potential maximum penalties with petitioner. Petitioner was not mad at Mr. Bandy and did not dispute Mr. Bandy's statements.  Additionally, the district court denied petitioner's request partly because he had not raised his concerns earlier.  The district court focused on the fact that petitioner made his request for substitute counsel on the first day of trial.  Petitioner had "more than ample opportunity ... to prepare for this case." Lopez I, 22 P.3d at 1046.

The factual findings by the district court are presumed to be correct under 28 U.S.C. § 2254(e)(1) and petitioner has failed to come forward with evidence sufficient to overcome that presumption. Having reviewed the entire record and totality of the circumstances, the court finds that petitioner's Sixth Amendment right to counsel was not violated when the district court refused to appoint substitute

_____

[6]Mr. Bandy told the trial judge that petitioner would likely refuse to work with any attorney that did not share petitioner's same beliefs.

[7]Mr. Bandy took over as lead counsel for petitioner when Mr. Betts left the state Public Defender's Office.

counsel.[8]  Therefore, petitioner's request for habeas relief on this ground is denied.

## B. Psychiatric Screening

Petitioner next claims that the district court erred by appointing only one licensed professional to evaluate petitioner's competency in violation of K.S.A. 22-3302(3)(c).  Petitioner raises no federal violation, but merely asserts that the state court did not comply with the state statute.  Respondent argues that this issue is procedurally defaulted.

When a federal habeas petitioner's claim has been defaulted in state court on an independent and adequate state ground, federal habeas courts will not generally address the issue.  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) ("It is now beyond cavil that the adequate and independent state ground doctrine is fully applicable to federal court review of habeas corpus petitions.").  "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision.  For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims."  Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998).  Under those circumstances, a federal habeas court will only consider a claim if the petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice."  English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

---

[8]After the district court's ruling, Mr. Lopez asked Mr. Bandy, "[a]re you going to fight for me?"  Mr. Bandy relied, "[o]f course."  Br. of Appellant, Attach. 1 at 19.

The Kansas Supreme Court relied on the case <u>State v. Green</u>, 245 Kan. 398, 781 P.2d 678 (1989) and held that appointing two licensed professionals is discretionary, not mandatory, with the district court. <u>Lopez I</u>, 22 P.3d at 1047-48. Additionally, the Kansas Supreme Court went on to find that petitioner's "[d]efense counsel approved the examination procedure followed by the trial court, and defense counsel even stated to the trial court that the procedure 'would be in accordance with the statute.'  This court does not permit a defendant to lead a trial court into an action and then complain of it on appeal. [Citations omitted]." <u>Id.</u> at 1048.

It is clear that the Kansas Supreme Court determined this issue adversely to petitioner on an independent state ground.  The court's decision was based on the Kansas precedent refusing to hear issues on direct appeal where the defendant failed to object and in fact approved of the procedure utilized by the trial judge.  The Court did not consider the merits of petitioner's claim.  The Court considered no federal precedent of any kind in reaching its determination. Thus, petitioner's claim is not reviewable in a collateral proceeding.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.  Petitioner has neither alleged nor shown cause and prejudice resulting from appointment of only one licensed professional.  Therefore, petitioner has not overcome the procedural default.  Moreover, the court has found that no fundamental miscarriage of justice exists. Petitioner's request for relief on this ground is denied.

-11-

**C. Competent to Stand Trial**

For his third claim, petitioner makes both procedural and substantive due process competency claims.[9]  On the first day of trial, after the district court denied petitioner's request for substitute counsel, Mr. Bandy told the trial judge that he did not believe petitioner was competent to stand trial.  Mr. Bandy explained that petitioner had difficulty communicating and described petitioner's beliefs as "delusional thoughts."  Petitioner's religious beliefs were more than just faith and were characterized by Mr. Bandy as premonitions.[10]  According to Mr. Bandy, petitioner was not thinking rationally about his case because he believed God would save him.

Petitioner explained that he was concerned about the plea negotiations involving all his pending cases and not each case separately.[11]  Petitioner did not want to plead guilty to crimes he believed he did not commit.  Based on petitioner's comments and concerns, the district court believed petitioner understood the nature and purpose of the proceedings and was capable of assisting in his defense.  Even so, the trial judge had petitioner examined by Dr. Horne over lunch.  Dr. Horne concluded petitioner was aware of the

---

[9]On direct appeal, petitioner raised the issue as a substantive due process claim, i.e., he was tried while mentally incompetent in violation of his due process rights.  However, petitioner has produced evidence suggesting that the competency evaluation was inadequate and there was evidence before the district court to create a "bona fide doubt" as to petitioner's competency, which is a procedural competency claim.

[10]Petitioner explained that God speaks to him through his dreams while he sleeps.  Br. of Appellant, Attach. 1 at 24.

[11]The district attorney would only negotiate a deal involving all the pending crimes together.

charges and capable of assisting Mr. Bandy in his own defense.

The district court found that petitioner was competent to stand trial.  The Kansas Supreme Court determined that there was no basis to find that the district court abused its discretion.  "It does not appear from the record that [petitioner] ever furnished evidence of lack of competence to the trial court or proffered evidence in this court."  Lopez I, 22 P.3d 1049.  It is clear that the Kansas Supreme Court determined this issue adversely to petitioner on an independent state ground.  The Court's decision was based on petitioner's lack of evidence.  The Court considered no federal precedent of any kind in reaching its determination.  Thus, the Kansas Supreme Court relied on an independent and adequate state ground in finding petitioner's claim is not reviewable in a collateral proceeding.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Substantive competency claims, however, are exceptions to this general rule and this court will address the merits of petitioner's claim.  Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997).

Whether a petitioner is competent to stand trial is a factual question.  Bryson v. Ward, 187 F.3d 1193, 1201 (10th Cir. 1999).  "A state court's factual finding of competency is presumed correct.  See 28 U.S.C. § 2254(e)(1). A petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  See id. A federal court may not issue a writ of habeas corpus unless the state courts' competency decisions were based on an unreasonable

-13-

determination of the facts in light of the evidence. <u>See</u> <u>id.</u> §
2254(d)(2).  The test for determining competency is whether a
defendant 'has sufficient present ability to consult with his lawyer
with a reasonable degree of rational understanding-and whether he has
a rational as well as factual understanding of the proceedings against
him.'" <u>Bryson</u>, 187 F.3d at 1201 (citing <u>Dusky v. United States</u>, 362
U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).

     A petitioner may assert a procedural competency claim as well as
a substantive competency claim.  <u>Walker v. Attorney General for State
of Oklahoma</u>, 167 F.3d 1339, 1344 (10th Cir. 1999).

          A petitioner may make a procedural competency claim by
     alleging that the trial court failed to hold a competency
     hearing after the defendant's mental competency was put in
     issue. To prevail on the procedural claim, "a petitioner
     must establish that the state trial judge ignored facts
     raising a 'bona fide doubt' regarding the petitioner's
     competency to stand trial."

          A petitioner may make a substantive competency claim
     by alleging that he was, in fact, tried and convicted while
     mentally incompetent. In contrast to a procedural
     competency claim, however, "a petitioner raising a
     substantive claim of incompetency is entitled to no
     presumption of incompetency and must demonstrate his or her
     incompetency by a preponderance of the evidence." A
     petitioner who presents "clear and convincing evidence'
     creating a "real, substantial and legitimate doubt" as to
     his competence to stand trial is entitled to a hearing on
     his substantive incompetency claim.

<u>Id.</u> at 1344.  In procedural competency claims, habeas petitioners
challenge the state procedures ensuring competency in light of
evidence that petitioner might be incompetent, whereas in substantive
competency claims, habeas petitioners simply claim they were
incompetent during trial.  <u>Id.</u> at 1345.

     On direct appeal, petitioner asserted that there was evidence
indicating that he was incompetent.  Petitioner argued that his

-14-

evaluation by Dr. Horne was inadequate to support the district court's finding of competency.   Petitioner asserts that an hour long evaluation over lunch is insufficient to effectively evaluate whether a person is competent to stand trial.

The Kansas Supreme Court did not address whether Dr. Horne's evaluation was adequate and found that Mr. Bandy only told the trial judge about his difficulty in communicating with petitioner.  <u>Lopez I</u>, 22 P.3d 1049.  It was the prosecution who raised the competency issue as well as the prosecution's idea to have petitioner examined by Dr. Horne.  <u>Id.</u>  After reviewing the record, however, this court finds that Mr. Bandy presented evidence of petitioner's competency to the district court.[12]  Mr. Bandy stated:

> I mean, from what he's basically saying is that he has conversations with God and that God tells him how things are basically going to be so it's not just a faith, that it goes one step beyond when they are actually, as I understand it, actually premonitions, you know, being able to see manifestations and things of this nature that really are controlling all the decisions that he's making in regards to this case.
>
> .              .              .
>
> If I thought this was a game, but I really do not think that he is capable in his present mental state that he can make an informed and intelligent decision based upon what I'm telling him there is not necessarily going to be. Any lawyer who says anything different than what God is telling him is simply not going to be listened to and I just don't really think that he has really thought any, considered any statements that I have made to him.  He will nod his head and he will do things but he's not listening. He's not making any decisions and those are the reasons.

Br. of Appellant, Attach. 1 at 22-24.

Regardless, the court finds that "[this] evidence, viewed objectively, did not raise either a bona fide or real, substantial or

---

[12]The Kansas Supreme Court considered Mr. Bandy's statements as evidence of the breakdown in communication between petitioner and Mr. Bandy.

legitimate doubt as to [petitioner's] competency.  Bryson, 187 F.3d at 1203.  The district court determined petitioner was competent based on its own observations of petitioner.  Id. at 1201-2 (noting that "a trial court may rely on its own observations of the defendant's comportment" and a competency hearing is not mandatory unless a "court has reason to doubt a defendant's competency").  Additionally, in its discretion, the district court had petitioner evaluated by Dr. Horne, an experienced psychiatrist.  Dr. Horne found that petitioner was competent.

The record does not contradict the district court's conclusion that petitioner was competent.  As such, the district court's finding that petitioner had a rational and factual understanding of the proceedings against him is entitled to a presumption of correctness.  Id. at 1204.  In petitioner's Memorandum in Support, he provides no additional evidence as to why the district court erred.  Therefore, petitioner's request for habeas relief on this ground is denied.

### F. Ineffective Assistance of Counsel

Petitioner's next claim evolves from his preceding claim, in that the district court erred in finding petitioner competent because Mr. Bandy failed to fully investigate and present evidence of his incompetency.  A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different.  Williams v. Taylor, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Strickland v. Washington,

466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In evaluating the performance of trial counsel, the Supreme Court provided the following guidance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S. Ct., at 164.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 689-90, 104 S. Ct. at 2065-66 (emphasis added). Thus, under this standard, counsel's performance is presumed competent, and petitioner bears the burden of rebutting that presumption.

Before petitioner's trial, Dr. Logan was hired to perform an evaluation to determine if petitioner was operating under a diminished

-17-

mental capacity at the time of the offense and to determine if petitioner was competent to stand trial. Due to complications at the jail, however, Dr. Logan got a late start and could not complete his evaluation. Dr. Logan finished the mental capacity tests, but could not fully complete the competency evaluation before asked to leave by the jail. Dr. Logan told Mr. Bandy that he wanted to perform one more test regarding petitioner's competency, but did not have time before the deadline for filing notice of a diminished capacity defense.

Mr. Bandy testified at the 1507 evidentiary hearing that petitioner's mental capacity was his only concern at the time Dr. Logan evaluated petitioner. Dr. Logan concluded that petitioner was not operating under a mental defect at the time of the offense. As such, Dr. Logan went ahead and wrote his report based on the hour and a half evaluation. Although Dr. Logan characterized his evaluation of petitioner's competency as preliminary, he still concluded petitioner was competent to stand trial. Dr. Logan further told Mr. Bandy about what "red flags" to look for in case petitioner's competency became questionable.

Mr. Bandy did not have any concerns about petitioner's competence to stand trial until the Friday before trial. Mr. Bandy stated that,

> [b]y that time I had talked with Mr. Lopez on several occasions and he, to me, he was clearly, you know oriented in time and space to sit down there and talk about his case in great detail. He responded to questions appropriately. He was not a -- a particularly, you know, outgoing individual. He was shy and reserved. But, certainly, I meet many individuals during my time as a criminal defense lawyer who, you know, approximate the condition that Mr. Lopez was displaying. (R. XXIII, 69).

Mr. Bandy noticed no "red flags" with petitioner. Petitioner was ready to go to trial and was even prepared to testify in his own defense.

-18-

Prior to trial, petitioner refused to enter into a plea agreement because the state would not separate petitioner's other pending crimes from the case in issue.[13]  Then, the Friday before petitioner's trial, the trial judge told Mr. Bandy to talk with petitioner about a new plea agreement.  Mr. Bandy brought up the new plea arrangement with petitioner because he felt the deal was in petitioner's best interests.  This made petitioner upset and it was at that point that Mr. Bandy and petitioner's relationship deteriorated.  Petitioner believed God would save him because he knew his heart.  Petitioner told Mr. Bandy he was like the devil because he was against him.

At first, Mr. Bandy thought petitioner had gotten "cold feet" about the trial, but then petitioner's comments continued over the weekend.  On the first day of trial, Mr. Bandy sought to withdraw, which was denied.  Mr. Bandy then told the trial judge that he believed petitioner was incompetent to stand trial.  The prosecution told the court that petitioner was previously evaluated by Dr. Logan, but a notice of diminished capacity was withdrawn.

Based on petitioner's conduct, the trial judge believed petitioner was competent.  The trial judge indicated, however, that if there was something in Dr. Logan's report to the contrary, he wanted to know about it.  Mr. Bandy responded he did not know what was in the report, but believed it only referenced petitioner's mental capacity. The prosecution believed petitioner was competent, but suggested that Dr. Horne evaluate petitioner.  Dr. Horne concluded that petitioner was alert, aware of the charges and consequences, and

---

[13]Petitioner did not want to plead guilty to this crime because he believed he acted in self-defense.

capable of cooperating with Mr. Bandy in his own defense.

The district court found that Mr. Bandy's actions did not fall below the objective standard of reasonableness and the Kansas Court of Appeals upheld the district court's findings.[14] After reviewing the record, the court finds that Mr. Bandy acted reasonably in light of the facts known to him at the time of petitioner's trial. See <u>Castro v. Ward</u>, 138 F.3d 810, 829 (10th Cir. 1998) (stating that courts evaluate counsel's performance at the time of trial). Dr. Logan concluded petitioner was competent based upon his preliminary evaluation and told Mr. Bandy what "red flags" to look for. Mr. Bandy watched for signs that petitioner was incompetent prior to trial, but saw none until a few days before trial.[15] Mr. Bandy raised the competency issue before the trial judge as soon as feasible. The trial judge had essentially found that petitioner was competent based on his own observations before the prosecution even offered to have Dr. Horne evaluate petitioner. Moreover, Dr. Horne concluded that petitioner was competent.

Mr. Bandy's performance was not deficient and therefore, did not prejudice petitioner's defense. Accordingly, petitioner's request for habeas relief on this ground is denied because he has failed to show that Mr. Bandy was ineffective pursuant to the standard in <u>Strickland</u>.

**D. Mr. Lopez' Absence**

---

[14]At the 1507 hearing, the district court noted that petitioner had also been found competent by Judge MacNish when petitioner's pleas were entered into on the other charges that were pending at the time this case was tried.

[15]Mr. Bandy's co-counsel, Stacey Donovan, noticed no signs that petitioner was incompetent until about a week to ten days before petitioner's trial.

Petitioner next argues that the district court questioned potential jurors outside his presence in violation of the Sixth Amendment Confrontation Clause and the Fourteenth Amendment Due Process Clause.  The Kansas Supreme Court found that petitioner has a constitutional and statutory right to be present at all critical stages of trial, which includes questioning a potential juror in chambers while the impaneling of the jury was in process.  Lopez I, 22 P.3d at 1051.  The trial judge violated petitioner's rights when both he and Mr. Bandy mistakenly believed that Mr. Bandy himself could waive petitioner's right to be present.  Id.  The Kansas Supreme Court concluded, however, that the error was harmless beyond a reasonable doubt.  Id.  Specifically, the Kansas Supreme Court found as follows:

> Here, Lopez was not denied a meaningful presence at a critical stage of his trial, nor did his absence at the time the juror was questioned in chambers implicate the basic consideration of fairness or undermine the function of a criminal trial. This is not a "structural error" and thus is subject to the harmless error analysis.
>
> Lopez' absence for the questioning of [M.A.] has the appearance of a potential for prejudice. The subject of the inquiry was the potential juror's acquaintance with a relative of the victim which, if true, might be a matter of serious concern to defendant. [M.A.], however, denied recognizing anyone, said that he would inform the court if he changed his mind, and assured the trial judge that he would be fair and open-minded even if he realized he knew someone.
>
> Thus, no prejudice has been shown as a result of Lopez' absence from the conference. The error was harmless.

Lopez I, 22 P.3d at 1052.

The Kansas Supreme Court applied the correct standard under federal law, and its application of that standard was reasonable.  See United States v. Lott, 433 F.3d 718, 722 (10th Cir. 2006) (recognizing

that "[s]ince <u>Chapman</u>, the Court has 'applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless.' (Citations omitted)").  Petitioner has not produced any evidence as to why the Kansas Supreme Court was in error. Therefore, petitioner is not entitled to habeas relief on this ground.

### E. Jury Instruction

In his final claim, petitioner asserts that the district court gave an unconstitutional burden of proof jury instruction.[16] Petitioner claims that the standard jury instruction misstates the law because it permits the jury to convict petitioner if it finds <u>any</u> claim, instead of <u>all</u> claims, made by the prosecution beyond a reasonable doubt.

In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden.  <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120, 114 S. Ct. 1074, 127 L. Ed.2d 392 (1994).  A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.

_____

[16]  The instruction on burden of proof and presumption of innocence states as follows:
   The State has the burden to prove the defendant is guilty.  The defendant is not required to prove he is not guilty.  You must presume that he is not guilty until you are convinced from the evidence that he is guilty.
   The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty.  If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty.
PIK Crim.3d 52.02.

-22-

Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir.), *cert. denied*, 498 U.S. 961, 111 S. Ct. 393, 112 L. Ed.2d 402 (1990).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737, 52 L. Ed.2d 203 (1977).

The Kansas Supreme Court interpreted "the claims made by the state language [to] refer[] directly to the 'claims' the State must prove beyond a reasonable doubt to convict the defendant." Lopez I, 22 P.3d at 1054.  The Kansas Supreme Court further noted that the jury instruction was taken directly from PIK Crim.3d 52.02, which had previously survived other constitutional attacks in State v. Clark, 261 Kan. 460, 473, 931 P.2d 664 (1997).  Id.

The court finds that the jury instruction on the state's burden of proof, which is given in all Kansas criminal cases, was not fundamentally unfair.  It correctly states the law and does not violate petitioner's Due Process right to have all elements or facts found beyond a reasonable doubt.  See Tillman v. Cook, 215 F.3d 1116, 1123 (10th Cir. 2000) ("[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'").  Thus, Petitioner is not entitled to relief on this ground.

## III. CONCLUSION

Petitioner's application for habeas corpus is denied.  (Doc. 1). The clerk shall enter judgment for defendant in accordance with Fed. R. Civ. P. 58.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this  11th  day of September 2008, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE